The STATE of Ohio, Appellee,

v.

WALKER, Appellant.

[Cite as *State v. Walker* (2000), 139 Ohio App.3d 52.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980849.

Decided Sept. 1, 2000.

54

*Michael K. Allen,* Hamilton County Prosecuting Attorney, *William E. Breyer* and *Ronald Springman,* Assistant Prosecuting Attorneys, for appellee.

*Bryan R. Perkins,* for appellant.

GORMAN, Presiding Judge.

Raising four assignments of error, defendant-appellant Anthony Walker appeals from the jury's verdict and his conviction for murder and felonious assault. The trial court imposed a prison term of fifteen years to life. Walker contends that, in selecting members of the jury, the state, without a valid race-neutral reason, exercised a peremptory challenge against an African–American prospective juror. We agree that the state's justification—that Walker had not established a pattern of discrimination—is not a valid race-neutral reason for the strike. Therefore, we reverse the judgment of the trial court and remand this case for a new trial or further proceedings consistent with this decision.

██ Walker objected to the state's peremptory challenge of a prospective juror, arguing that the state, in violation of the Fourteenth Amendment, had struck the juror because he was African–American. See *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. At side-bar conference, the trial court asked, "What is the basis of your objection, Mr. Bennett?" Walker's counsel replied:

"[T]he defendant is black. The juror that was challenged is also black. There is no evidence whatsoever based on his responses to the questioning, based on the

voir-dire process that he can't be fair and impartial. I believe he's being taken off the jury because he is an African–American as is the defendant."

The prosecuting attorney responded:

"Under *Batson*, a pattern of discriminatory exclusion based on race has to be established by the defendant before the challenge can be considered by the Court. I will note at this juncture there are reasons in the record why I am asking to have him excused.

"I will note at this point that the first juror I moved to excuse was a white juror, was not black. I can't remember—this is my second challenge. There are still three jurors on the panel at this point, I believe, that are Afro–Americans."

The trial court then stated, "Well, I think the record should reflect that there are three jurors still on the panel at this point that are African–American. * * * Objection is overruled."

In *Batson*, the United States Supreme Court recognized that the Equal Protection Clause of the Fourteenth Amendment, United States Constitution, precludes purposeful discrimination by the state in the exercise of its peremptory challenges so as to exclude members of minority groups from service on petit juries. See *id.* at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82–83; see, also, *State v. Hernandez* (1992), 63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313. Jury service is one of the most important rights and duties of a citizen. As the Fourteenth Amendment protects the rights of prospective jurors to be free from discriminatory challenges, the exercise of even one peremptory challenge in a purposefully discriminatory manner would violate equal protection. See *State v. Gowdy* (2000), 88 Ohio St.3d 387, 393, 727 N.E.2d 579, 585; see, also, *State v. White* (1999), 85 Ohio St.3d 433, 436, 709 N.E.2d 140, 147.

To establish a prima facie case of purposeful discrimination, a defendant must demonstrate (1) that members of a cognizable racial group were peremptorily challenged and (2) that the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. See *State v. Johnson* (2000), 88 Ohio St.3d 95, 116, 723 N.E.2d 1054, 1073. If a defendant makes a prima facie case of discrimination, the state must then provide a race-neutral explanation. See *State v. Hill* (1995), 73 Ohio St.3d 433, 445, 653 N.E.2d 271, 282. A trial court's findings of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous. See *State v. Hernandez*, 63 Ohio St.3d at 583, 589 N.E.2d at 1314.

Here, Walker objected to the removal of an African–American from the jury. His counsel explained that the prospective juror had given no indication during

voir dire that he could not be fair and impartial. The state, however, argues on appeal that Walker failed to establish a prima facie case. This argument must fail. In *State v. Johnson*, 88 Ohio St.3d at 116, 723 N.E.2d at 1074, relied upon by the state, the Supreme Court, in *obiter dicta*, questioned whether the defendant had established a prima facie case after ruling that the state had given a valid, race-neutral explanation for the challenge. Here, however, Walker identified facts and circumstances in the prospective juror's voir dire responses sufficient to establish the inference that the prosecutor used the peremptory challenge to exclude a juror because he was an African–American.

The record further confirms that both the trial court and the state proceeded as if Walker had established a prima facie case of discriminatory intent. As the Ohio Supreme Court held in *State v. White*, 85 Ohio St.3d at 437, 709 N.E.2d at 148, "[o]nce the proponent explains the challenge and the trial court rules on the ultimate issue of discrimination, whether or not a prima facie case was established becomes moot."

■ Once the defendant has made out a prima facie case of racial discrimination, the burden of production shifts to the prosecutor, the proponent of the strike, to come forward with a race-neutral explanation. See *Batson v. Kentucky*, 476 U.S. at 96–98, 106 S.Ct. at 1722–1723, 90 L.Ed.2d at 87–89. "The second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem* (1995), 514 U.S. 765, 767–768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839, quoting *Hernandez v. New York* (1991), 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406.

The explanation offered by the prosecutor—that Walker had not established a pattern of discriminatory exclusion based on race, and that three African–Americans remained—is not a facially valid, race-neutral justification for a peremptory strike.

■ As this court noted nearly thirteen years ago, the United States Supreme Court in *Batson* explicitly "rejected the evidentiary formulation * * * which required a defendant * * * to demonstrate the systematic exclusion of a group of jurors * * *." *State v. Pratt* (Sept. 9, 1987), Hamilton App. No C–860436, unreported, 1987 WL 16790. As the existence of a pattern of discriminatory strikes is not a prerequisite to a prima facie case or to a finding of actual discrimination by the trial court, here, the prosecutor has failed to identify a race-neutral reason for exercising his peremptory challenge. See *State v. White*, 85 Ohio St.3d at 436, 709 N.E.2d at 147. The fact that other African–American

jurors remained on the jury does not exonerate the state for the discriminatory exercise of a peremptory challenge. See *State v. Gowdy*, 88 Ohio St.3d at 393, 727 N.E.2d at 585.

As the only justifications offered by the state have been explicitly rejected by the United States and the Ohio Supreme Courts, we hold that the trial court's acceptance of the state's impermissible explanation, in light of all the circumstances, was clearly erroneous. See *State v. Hernandez*, 63 Ohio St.3d at 583, 589 N.E.2d at 1314. As "the litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings," the judgment of the trial court must be reversed and the cause remanded. See *J.E.B. v. Alabama ex rel. T.B.* (1994), 511 U.S. 127, 140, 114 S.Ct. 1419, 1427, 128 L.Ed.2d 89, 104, citing *Edmonson v. Leesville Concrete Co., Inc.* (1991), 500 U.S. 614, 628, 111 S.Ct. 2077, 2087, 114 L.Ed.2d 660, 678–679. The first assignment of error is sustained.

In his third assignment of error, Walker challenges the sufficiency of the evidence adduced to support his convictions for murder and felonious assault. A claim of insufficient evidence raises the issue of a deprivation of due process. Therefore, a reviewing court does not weigh the evidence, but rather examines the record in a light most favorable to the prosecution to discover whether a rational trier of fact could have found the existence of all the essential elements of the offenses beyond a reasonable doubt. See *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

The state's evidence reveals that Walker and his cousin entered into a gun battle with a rival group over a failed romantic relationship involving the cousin's sister. Fleeing from the gun battle, the Walkers entered "Coach's Bar." After acting belligerently toward a waitress, they were ordered to leave the bar by the proprietor, James Herbert, Sr. Anthony Walker ended a scuffle with Herbert's son by bludgeoning him over the head with his chrome revolver. While walking out of the bar, he thought he saw the bartender hand an object to Herbert. Walker shot Herbert, striking him in the abdomen. The two backed out of the bar and fled in a car driven by the cousin's mother. Walker hid the murder weapon and left Ohio. He was apprehended in Tennessee. Herbert later died from his wounds.

The assignment of error is overruled, as there is substantial, probative evidence in the record from which the trier of fact could have reasonably concluded that all elements of the charged crimes were proven beyond a reasonable doubt. See *State v. Waddy* (1992), 63 Ohio St.3d 424, 588 N.E.2d 819, certiorari denied (1992), 506 U.S. 921, 113 S.Ct. 338, 121 L.Ed.2d 255.

Walker's second and fourth assignments of error, in which he challenges statements made by the prosecutor in closing argument and the manifest weight of the evidence, are rendered moot by our decision with respect to his *Batson* challenge. See App.R. 12(A)(1)(c).

Therefore, the judgment of the trial court is reversed, and this cause is remanded for a new trial or further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PAINTER and SUNDERMANN, JJ., concur.