The STATE of Ohio, Appellee,

v.

KINER, Appellant.

[Cite as State v. Kiner, 149 Ohio App.3d 599, 2002-Ohio-5578.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010666.

Decided Oct. 18, 2002.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Paula E. Adams, Assistant Prosecuting Attorney, for appellee.

Joseph E. McCright, for appellant.

SUNDERMANN, Judge.

{¶ 1}   Adam Bennett was on his way home from work on April 30, 2001, when two individuals approached him from behind and demanded money.   One of the two individuals, whom Bennett subsequently identified as defendant-appellant Fernando Kiner, held a gun on him.   After Bennett handed over his cash and other items, Bennett was told to run and not to look back.

{¶ 2}   Shortly thereafter, Bennett contacted the police and gave them a description of his assailants.   Police subsequently provided Bennett with six photographs of individuals who fit the description he had provided.   Bennett identified Kiner from the photographs.   Kiner was then charged with aggravated robbery in violation of R.C. 2911.01(A)(1) and with a gun specification.   After a jury trial, Kiner was convicted and sentenced as appears of record.   He now appeals his conviction, raising two assignments of error.

{¶ 3}   In his first assignment of error, Kiner challenges the trial court's denial of a motion to suppress his identification.   Kiner contends that Bennett did not have enough time or a good enough look to properly identify his assailants, that the identification took place too long after the event, and that the photographic lineup was unduly suggestive.   We disagree.

{¶ 4}   In *Neil v. Biggers*,[1] the United States Supreme Court outlined five factors for courts to use when determining whether identification evidence is reliable:  (1) the witness's opportunity to view the subject at the time of the crime;  (2) the witness's degree of attention;  (3) the accuracy of the witness's prior description of the suspect;  (4) the witness's confidence in the identification; and (5) the length of time between the crime and the identification.[2]   Reliability is determined by the totality of the circumstances.[3]   To review the trial court's

---

1.   (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

2.   Id. at 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401.

3.   Id. at 199, 93 S.Ct. 375, 34 L.Ed.2d 401.

ruling on the admissibility of identification testimony, we must decide whether the procedure used by the police was suggestive and whether there was a "very substantial likelihood of irreparable mistaken identification."[4]

{¶ 5} A review of the record reveals that a police officer presented Bennett with six photographs. The photographs were numbered one through six. The police officer told Bennett that the individual whom police believed was his assailant was in one of the photographs. Kiner's photograph was the only one with a circle around the number. Bennett carefully examined the photographs for eight minutes before selecting Kiner's photograph.

{¶ 6} Considering the totality of the circumstances, we hold that there were sufficient indicia of reliability in Bennett's identification of Kiner. Bennett's identification testimony clearly satisfied all five elements of reliability set forth in *Biggers*. At the suppression hearing, Bennett testified that he had a "good" opportunity to view Kiner during the robbery, as Kiner stood three or four feet away, directly in front of him, under a lit sky for approximately one full minute. Bennett further testified that during the robbery he focused his attention on Kiner and paid strict attention to his commands to avoid "creating any tension." The fact that Bennett's identification took place twenty-four days later was not unreasonable. Furthermore, Bennett's identification both at the photographic lineup and in court was unequivocal.[5] Even though the photographic lineup was somewhat suggestive, we agree with the trial court's determination that the identification was reliable under the totality of the circumstances. As a result, we overrule the first assignment of error.

{¶ 7} In his second assignment of error, Kiner asserts that the trial court did not conduct the proper analysis under *Batson v. Kentucky* in dismissing a black juror.[6] We agree.

{¶ 8} Under *Batson*, the defense must first establish a prima facie case of discrimination by showing (1) that the state has peremptorily challenged a member of a recognized racial group and (2) that the facts and any other relevant circumstances raise an inference that the prosecutor has used the peremptory challenge to exclude the juror on account of his race.[7] Once the defense has

---

4. *State v. Hampton*, 1st Dist. No. C–010159, 2002-Ohio-1907, 2002 WL 507330, at ¶ 12.

5. See id. at ¶ 17.

6. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; see, also, *State v. Hernandez* (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310.

7. See *State v. Johnson* (2000), 88 Ohio St.3d 95, 116, 723 N.E.2d 1054, certiorari denied (2000), 531 U.S. 889, 121 S.Ct. 212, 148 L.Ed.2d 149.

established a prima facie case, the burden then shifts to the state to present a race-neutral reason as to why the challenge was made. If the trial court finds the race-neutral reason appropriate, its decision will not be reversed on appeal unless it is clearly erroneous.[8] However, a trial court's decision about whether a prima facie case of discrimination has been established is a mixed question of law and fact, which we review de novo.[9]

{¶ 9} In this case, the prosecution exercised one of its peremptory challenges against prospective juror Khalilah Glover. Glover was the only African–American juror on the panel. Defense counsel objected to the challenge. A sidebar conference was then held, where the trial court asked defense counsel to make a prima facie case of discrimination. In response, defense counsel argued that the defendant was entitled to a randomly selected pool of jurors, including members of his own race, and that the prosecution's peremptory challenge to the only African–American juror on the panel deprived the defendant, who was also African–American, of his right to a jury of his peers. The prosecuting attorney then responded to defense counsel's argument by stating that defense counsel had not made the requisite showing that Glover had been excused for a discriminatory purpose.

{¶ 10} The trial court then discussed a series of factors that it was considering in its determination of a prima facie case, which included the following: the number of racial group panelists in the venire, the nature of the crime involved, the race of the defendant and the victim, the pattern of racial strikes against members of the jury and others, the prosecuting attorney's questions and statements during voir dire, and any disparate treatment of members of the venire who had the same characteristics. The court then stated the following:

{¶ 11} "So, at any rate, my point is that it appeared to me that with respect to Ms. Glover, the African–American juror, that she was asked the same type of and nature of questions as any other juror, and vice versa. She did—She is African–American, and she was excused.

{¶ 12} "And she was the only member of the jury panel that is African–American. And the defendant is African–American. But apart from that, there is no showing of any kind of purposeful discrimination. And I don't mean to suggest that those points showed purposeful discrimination, I'm just saying that those are the only points I have anything to hang a hat on, or that Mr. Keller, respectfully, has a chance to bring to my attention. And those, in and of

---

8. See *Hernandez v. New York* (1991), 500 U.S. 352, 358–359, 111 S.Ct. 1859, 114 L.Ed.2d 395; *State v. Hernandez,* supra, at 581–582, 589 N.E.2d 1310 (citing *Batson,* supra, at 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69).

9. See *State v. Dockery,* 1st Dist No. C–000316, 2002-Ohio-189, 2002 WL 63437.

themselves, would be insufficient to make a prima facie showing of discrimination. So, respectfully, I'm going to deny your motion."

{¶ 13} The record reveals that the trial court failed to follow the procedure set forth in *Batson.* In its analysis, the trial court improperly placed the burden on defense counsel to give a discriminatory reason for the challenge. *Batson* contemplates that the state has the burden to show a nondiscriminatory intent once a prima facie case has been established. Furthermore, a defendant need only raise an inference of discrimination to establish a prima facie case under *Batson*.[10] Under *Batson*, Kiner, an African–American, showed that he was a member of a racial group that was singled out for differential treatment, and that the prosecution had removed from the venire Glover, another African–American, through the exercise of a peremptory challenge. Additionally, the facts and circumstances surrounding the prosecution's peremptory challenge of Glover were sufficient to raise an inference that Glover was excluded on the basis of her race. During the voir dire, the prosecutor spent very little time questioning Glover.[11] The only information that the prosecutor obtained from Glover was that she lived in Hamilton County and she worked in market research.

{¶ 14} Because defense counsel had established a prima facie case, the trial court was then required under *Batson* to ask the state whether it had a race-neutral reason to exclude Glover and to make a ruling on its appropriateness. The court, however, never asked for such a reason, and the state never proffered one.[12] The trial court then speculated as to the prosecuting attorney's intent in striking Glover and based on that speculation stated that it found no purposeful discrimination.[13]

{¶ 15} The trial court's actions in this case are analogous to the trial court's actions in *State v. Dockery.* In *Dockery*, the defendant had objected to the state's peremptory challenge of an African–American juror. The defendant had argued that the state's removal of the only African–American juror meant that the prosecution's witnesses (who were all Caucasian) and the defense's witnesses (who were all African–American) would be divided along racial lines. Defense counsel then requested that the trial court either disallow the challenge or declare a mistrial. The trial court, without ever calling upon the prosecution to

---

10. *Batson*, supra, 476 U.S. at 96, 106 S.Ct. 1712, 90 L.Ed.2d 69.

11. See *State v. Bryant* (1995), 104 Ohio App.3d 512, 518, 662 N.E.2d 846.

12. Cf. *State v. Walker* (2000), 139 Ohio App.3d 52, 56, 742 N.E.2d 1173 (where the state proffered an explanation, which we held was not a facially valid, race-neutral justification for the peremptory strike).

13. See *Dockery*, supra.

provide a race-neutral explanation for the challenge, denied the request and replaced the African–American juror.

{¶ 16} In *Dockery*, we held that because the defendant "had established a prima facie case of purposeful discrimination by the prosecution in its exercise of its peremptory challenge to strike [a juror] from the jury," "the trial court [had] erred, as a matter of law, in failing to call upon the prosecution to provide a race-neutral explanation for the strike and to then determine whether the [defendant] had sustained his ultimate burden of proving discrimination." Consequently, we remanded the case to the trial court for an evidentiary hearing on the defendant's *Batson* claim so that the trial court could determine whether the prosecution had violated the standard set forth in *Batson* in exercising its peremptory challenge.

{¶ 17} Because the trial court failed in this case to follow the procedure set forth in *Batson*, we sustain the second assignment of error and remand this case to the trial court for the limited purpose of conducting a hearing on a *Batson* claim in accordance with our decision in *State v. Dockery*. The trial court shall, within thirty days of this decision, by means of a supplemental record, transmit and certify to this court its findings and the record of the proceedings from which they derive. Thereafter a date will be set for reargument of this case on the second assignment of error.

Cause remanded with instructions.

DOAN, J., concurs.

PAINTER, P.J., concurs in judgment only.