DECISION.
{¶ 1} In the early evening of July 23, 2001, Clem Turner and Lornie Pierre Starkey were traveling in Turner's red Honda CRV on a residential street in Pleasant Ridge. A red Ford Escort containing two men approached Turner's Honda from the opposite direction. The driver of the Escort fired a gun into the Honda. The Honda accelerated, running off of the road, hitting a tree, tipping over and coming to rest on the driver's side. The driver of the Escort backed up to the overturned Honda, got out of his vehicle, approached the Honda, and fired into it, killing Turner and Starkey. The driver then got back into the Escort and drove away.
 {¶ 2} Witnesses noted the Escort's license plate number. The Escort was registered to Shirley Fairley, the mother of defendant-appellant Montez L. Taylor. Police determined that Taylor had been driving his mother's car. Taylor was subsequently arrested at his mother's house. He denied any knowledge of the killings.
 {¶ 3} Early the next morning, police showed seven witnesses a photographic array that included Taylor's picture. Four of the seven witnesses picked Taylor's photograph out of the array. That same morning, police received a Crimestoppers tip that Taylor and David Dion Johnson had been together right before the murders. The police initially were unable to locate Johnson because he had fled to California. Witnesses were never shown a photograph of Johnson.
 {¶ 4} Taylor was indicted for two counts of aggravated murder with death penalty and firearm specifications. While Taylor was awaiting trial, he was charged with assaulting a Hamilton County corrections officer. Taylor's first capital murder trial ended with a hung jury. Prior to the retrial of his capital case, Taylor was tried and convicted for the assault on the corrections officer. His sentencing for the assault conviction was continued until after the homicide retrial.
 {¶ 5} Taylor's retrial on the aggravated murder charges began on June 17, 2002. David Johnson testified that he had been a passenger in the Escort on the day that Turner and Starkey were killed. Johnson stated that earlier in the day he had "had words" with Turner. Later, Johnson testified, Taylor picked him up in the Escort. When Johnson told Taylor about the argument with Turner, Taylor became angry. The Escort passed the Honda, which Johnson recognized as Turner's vehicle. Johnson stated that Taylor had fired into the Honda. After the Honda had flipped over, Taylor got out of the Escort, walked over to the Honda and fired through the windows at the victims. According to Johnson's testimony, after Taylor had returned to the Escort, the two drove to Johnson's girlfriend's house, where Taylor changed the license plates on the Escort.
 {¶ 6} After the murders, Johnson fled to California. Johnson's grandmother testified that Johnson had gone to California because his life had been threatened. She also testified that Taylor had telephoned her from prison and had told her that Johnson had had nothing to do with the murders.
 {¶ 7} The state presented the testimony of several eyewitnesses to the murders. The witnesses identified Taylor, and not Johnson, as the killer. There was also testimony that police had recovered a holster from the Escort. The murder weapon was never recovered. Taylor testified in his own defense, claiming that Johnson had committed the murders.
 {¶ 8} The jury found Taylor guilty of the murders, but recommended sentences of life in prison without the possibility of parole. The trial court sentenced Taylor to two consecutive life terms for the murders, two mandatory three-year terms for the firearm specifications, and twelve months for the assault conviction.
 {¶ 9} Taylor has appealed, raising five assignments of error for our review. The first assignment of error alleges that the trial court erred in overruling Taylor's motion to suppress the out-of-court and the in-court eyewitness identifications. Taylor contends that the identification procedures were impermissibly suggestive and produced results that were unreliable.
 {¶ 10} In order to suppress identification evidence, a defendant has the burden to show that the identification procedure was unnecessarily suggestive. If the defendant meets this burden, the court must consider whether the procedure was so unduly suggestive as to give rise to a substantial likelihood of irreparable misidentification. See Simmons v. United States
(1968), 390 U.S. 377, 88 S.Ct. 967. Even if the procedure was suggestive, the challenged identification evidence is admissible at trial as long as it is reliable. See Manson v. Brathwaite
(1977), 432 U.S. 98, 97 S.Ct. 2243; State v. Keith,79 Ohio St.3d 514, 1997-Ohio-367, 684 N.E.2d 47; State v. Smith (June 14, 2002), 1st Dist No. C-010517, 2002-Ohio-2886; State v.Hampton (Apr. 5, 2002), 1st Dist. No. C-010159, 2002-Ohio-1907.
 {¶ 11} In determining whether identification evidence is reliable, the trial court must consider the opportunity of the witness to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. See Neil v.Biggers (1972), 409 U.S. 188, 93 S.Ct. 375; State v. Smith, supra. The reliability of the identification evidence is determined from the totality of the circumstances. See id.
 {¶ 12} Taylor argues that the photographic array shown to witnesses was impermissibly suggestive because not all of the individuals were the same age, not all of them had bushy hair, and two of the individuals were clean-shaven, while Taylor wore a mustache and a goatee.
 {¶ 13} "A defendant in a line-up need not be surrounded by people nearly identical in appearance." State v. Davis,76 Ohio St.3d 107, 1996-Ohio-414, 666 N.E.2d 1099. In Davis, the Ohio Supreme Court held that a line-up that included all African-American males with facial hair was not unduly suggestive, even though the complexions of the men varied and none of the others had a curly hairstyle like Davis.
 {¶ 14} In State v. Browner, 4th Dist No. 99CA2688, 2001-Ohio-2518, the appellate court held that a photographic array was not impermissibly suggestive where Browner's photograph was the only one in the array with a white background. The court further held that the police were not required to insert only photographs of bald-headed men into the array even though the witness had described the robber as "bald in front" with short hair because, as the court noted, "hairstyles may change."
 {¶ 15} The seventh district court of appeals held that a photographic array was not unduly suggestive where the suspect had been described as having a cornrow hairstyle, and only two of the individuals in the array had a cornrow hairstyle. See Statev. Jacobs, 7th Dist. No. 99-CA-110, 2002-Ohio-5240. In State v.Larry (May 28, 2003), 5th Dist. No. 02-CA-56, 2003-Ohio-2747, the appellate court held that an array that included a mug shot of Larry that was taken when his hair was partially in cornrows and partially in an Afro hairstyle was not impermissibly suggestive. We held, in State v. Johnson (Jan. 20, 1988), 1st Dist. No. C-870072, that a photographic array was not impermissibly suggestive where all of the individuals appeared to have minimal facial hair, even though Johnson argued that he was the only person in the array without facial hair and the victim had described her attacker as clean-shaven.
 {¶ 16} In State v. Nelson, 8th Dist. No. 81558, 2003-Ohio-3219, the appellate court held that a photographic array was not impermissibly suggestive because Nelson's photograph had a different background than the other photographs. We held, in State v. Kiner, 149 Ohio App.3d 599,2002-Ohio-5578, 778 N.E.2d 144, that under the totality of the circumstances the victim's identification of Kiner was reliable, even though the police officer showing the victim the array had stated that the individual that police believed was the perpetrator of the aggravated robbery was in the six-photo array and Kiner's photograph was the only one with a circle around the number.
 {¶ 17} We have examined the photographic array in the instant case, and we hold that it is not unnecessarily suggestive. The array contains photographs of African-American men of approximately the same age with varying styles of short to medium length hair. At least four of the individuals appear to have some facial hair. Police did not indicate to any of the witnesses whether the suspected killer was among the photographs in the array.
 {¶ 18} We hold that Taylor has failed to meet his burden to show that the identification procedures were impermissibly suggestive. The first assignment of error is overruled.
 {¶ 19} Taylor's second assignment of error raises a claim of racial discrimination in jury selection pursuant to Batson v.Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712. Taylor alleges that the trial court erred in permitting the state to exercise its peremptory challenges to systematically exclude African-Americans from the jury in violation of his constitutional rights to equal protection and due process. Taylor specifically argues that the trial court erred by accepting the state's "obviously pretextual" reasons for challenging three prospective African-American jurors.
 {¶ 20} The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse a juror on account of his race. See id.; State v. Hernandez (1992), 63 Ohio St.3d 577,589 N.E.2d 1310. The exercise of even one peremptory challenge in a purposefully discriminatory manner is a violation of equal protection. See State v. Gowdy, 88 Ohio St.3d 387,2000-Ohio-812, 727 N.E.2d 579; State v. Walker (2000),139 Ohio App.3d 52, 742 N.E.2d 1173.
 {¶ 21} "The United States Supreme Court has promulgated a three-step procedure for evaluating a claim that racial discrimination has motivated the exercise of a peremptory challenge. First, the party opposing the peremptory challenge must establish a prima facie case of purposeful discrimination in the exercise of the challenge. If a prima facie case has been established, the burden of production shifts to the proponent of the challenge to tender a race-neutral explanation. The trial court must then determine whether the challenge's opponent has carried the ultimate burden of proving purposeful discrimination." State v. Dockery, 1st Dist. No. C-000316, 2002-Ohio-189, at ¶ 3.
 {¶ 22} A finding by the trial court of no purposeful discrimination will not be reversed on appeal unless it is clearly erroneous. See State v. Hernandez, supra. The focus of the reviewing court is on the genuineness of the race-neutral explanation and not its reasonableness. See State v. Nixon, 1st Dist No. C-020428, 2003-Ohio-3384; State v. Gatewood (Dec. 22, 2000), 1st Dist. No. C-000157.
 {¶ 23} A prima facie case of purposeful discrimination is established by a demonstration that members of a cognizable racial group were peremptorily challenged, and that the facts and any relevant circumstances raise an inference that the state used the peremptory challenges to exclude jurors on account of their race. See State v. Johnson, 88 Ohio St.3d 95, 2000-Ohio-276,723 N.E.2d 1054; State v. Walker, supra.
 {¶ 24} Taylor is African-American. The prosecution exercised three of its peremptory challenges to exclude African-Americans from the jury. In each case, the trial court required the prosecution to give its reasons for the challenge; and in each case, the court ruled that the reasons given were race-neutral.
 {¶ 25} The prosecution's first challenge was to a former liquor-control agent. The prosecutor's stated reasons for exercising the peremptory challenge were that the prospective juror had a conviction for criminal damaging and that he was now unemployed.
 {¶ 26} The second peremptory challenge exercised by the prosecution was against a prospective juror who worked at the same company as Taylor's mother. The prosecutor stated that even though the prospective juror did not know Taylor's mother, the workplace situation could foster some sort of affinity with Taylor's mother. Further, the prosecutor stated that the prospective juror had been "in trouble with the law" over child-support issues in the juvenile court. In addition, the prosecutor noted that the prospective juror had stated that he did not know anything about his adult siblings or their occupations.
 {¶ 27} The prosecution exercised the third peremptory challenge against a prospective juror who had indicated that she knew the victims and possibly some of their family members. In addition, the prospective juror was confused about the meaning of the word "opposed," apparently believing that being "opposed" to something meant being in favor of it.
 {¶ 28} In all three cases, the reasons given by the prosecution for challenging the prospective jurors were race-neutral. The record supports the prosecutor's valid race-neutral reasons for challenging the prospective jurors. We hold that the trial court's decision to overrule Taylor'sBatson challenges was not clearly erroneous. The second assignment of error is overruled.
 {¶ 29} Taylor's third assignment of error alleges that the trial court erred in failing to enforce its order for the separation of witnesses. Taylor argues, citing State v. Snowden
(1982), 7 Ohio App.3d 358, 455 N.E.2d 1058, that "[a]lthough there was technically not a violation of the separation order in this case, there was clearly a violation of the spirit of the order."
 {¶ 30} Prior to the testimony of three eyewitnesses to the murders, the prosecution introduced David Johnson to the witnesses who were seated in the hallway outside the courtroom. The prosecutor asked the witnesses if Johnson was the person who had shot Turner and Starkey. One of the witnesses stated that there had also been some discussion with the prosecutor about the witnesses' upcoming testimony.
 {¶ 31} Defense counsel made a motion for a mistrial. In the alternative, defense counsel requested that the trial court strike the testimony of the witnesses. Following argument, the trial court stated, "It is unfortunate that you have this informal lineup with all three of your witnesses out in the hallway somewhere. I mean, it wasn't the proper thing to do. However, I am going to overrule your objection. You may argue that to the jury so far as the validity of their identification. It will be overruled, your motion."
 {¶ 32} "The purpose of a separation order is `so that [witnesses] cannot hear the testimony of other witnesses,' Evid.R. 615, and tailor their own testimony accordingly. Thus a spectator or witness may not tell a prospective witness what has taken place in court if the judge has ordered separation of witnesses." State v. Waddy (1992), 63 Ohio St.3d 424,588 N.E.2d 819, citing State v. Spirko (1991), 59 Ohio St.3d 1, 14,570 N.E.2d 229, 246. Options available to the court if a separation order is violated include the declaration of a mistrial, the striking of the witnesses' testimony, or the giving of a jury instruction as to how the violation may reflect on the witnesses' credibility. See State v. Roberts (2000),139 Ohio App.3d 757, 745 N.E.2d 1057. The remedy for a violation of a separation order is within the sound discretion of the trial court. See State v. Martin (Aug. 24, 1994), 1st Dist. No. C-930253.
 {¶ 33} In State v. Martin, supra, prior to the testimony of two prosecution witnesses, the prosecutor took the witnesses to a room outside the courtroom and discussed one witness's testimony in front of the other witness. The trial court refused to exclude the witnesses' testimony, but allowed defense counsel to address the issue on cross-examination. During cross-examination, one witness admitted that the prosecutor had "gone over" his testimony in front of another witness, but denied that the two witnesses had discussed their testimony. We held that the trial court did not abuse its discretion in refusing to exclude the witnesses' testimony because, at the time the meeting with the prosecutor took place, neither witness had testified and neither had disclosed any testimony that had already been presented in the courtroom. We also held in Martin that the trial court did not err in refusing to exclude the testimony of a prosecution witness who had spoken with a defense witness after the prosecution witness had testified, but before the defense witness had testified, because the record showed that the prosecution witness had not revealed any testimony that had been presented in court.
 {¶ 34} We overruled the same claims made by Martin's co-defendant Joseph Brown in State v. Brown (Aug. 17, 1994), 1st Dist No. C-930217. In addition, we held in Brown that the trial court did not err in refusing to exclude the testimony of a prosecution witness who had spoken to the prosecutor prior to her courtroom testimony in the presence of the victim's mother and sister, who were not witnesses, and a police officer who had already testified, because there was nothing in the record to demonstrate that the police officer had discussed his in-court testimony, that the prosecution witness had been informed about the in-court testimony of any other witness, or that the prosecution witness had tailored the contents of her testimony as a result of the conversation.
 {¶ 35} The record in the instant case reveals that, at the time that the prosecutor had brought Johnson into the hallway and had spoken to the witnesses, none of the witnesses had testified in court, none of the witnesses had been informed about the contents of the in-court testimony of any other witness, and none of the witnesses had been instructed how to testify at trial. The trial court allowed defense counsel to cross-examine the witnesses about the hallway conversation. There is no indication that any of the witnesses tailored the contents of his or her in-court testimony based upon the hallway conversation. We hold that the trial court did not err in overruling defense counsel's motion for a mistrial or in refusing to exclude the witnesses' testimony.
 {¶ 36} The case of State v. Snowden, supra, cited by Taylor is inapposite. In Snowden, a spectator took notes during the in-court testimony of witnesses and allegedly discussed the testimony with other witnesses who were not in the courtroom and who had not yet testified.
 {¶ 37} The third assignment of error is overruled.
 {¶ 38} Taylor's fourth assignment of error alleges that the trial court erred in admitting improper "other acts" evidence in order to show that he had acted in conformity with his "bad character" in killing Turner and Starkey.
 {¶ 39} Evid.R. 403(A) provides that "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 40} Evid.R. 404(B) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 41} R.C. 2945.59 provides, "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 42} "Evidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." State v. Woodard, 68 Ohio St.3d 70, 1993-Ohio-241,623 N.E.2d 75. In State v. Smith (1992), 84 Ohio App.3d 647,660, 617 N.E.2d 1160, the second appellate district, citing 1 Weissenberger, Ohio Evidence (1993), Sections 404.4 and 404.23, stated, "The basic thrust of Evid.R. 404 concerns the propensity rule, which is a basic principle that evidence of a person's character trait is not admissible for the purpose of proving that he acted in conformity with his character on a particular occasion. It prohibits use of propensity to demonstrate actions conforming to the propensity. It creates a forbidden inferential pattern, in which character or a trait of it is used to show propensity and to demonstrate therefrom conforming conduct. The policy of the rule is not based on relevance but upon the danger of prejudice."
 {¶ 43} R.C. 2945.59 and Evid.R. 404(B) are to be strictly construed against admissibility. See State v. DeMarco (1987),31 Ohio St.3d 191, 509 N.E.2d 1256; State v. Griffin (2001),142 Ohio App.3d 65, 753 N.E.2d 967; State v. Carusone, 1st Dist No. C-010681, 2003-Ohio-1018. "Other acts" evidence is not admissible for the sole purpose of proving that the defendant committed the charged crime. See State v. Thompson (1981),66 Ohio St.2d 496, 422 N.E.2d 855; State v. Carusone, supra;State v. Smith, supra. "Other acts" evidence may be admitted only if (1) substantial proof is adduced to show that the person against whom the evidence is offered committed the other act; (2) one of the matters enumerated in the rule or the statute is a material issue at trial; and (3) the evidence tends to prove the material enumerated matter. See State v. Curry (1975),43 Ohio St.2d 66, 330 N.E.2d 720, syllabus; State v. Carusone, supra. "Other acts" evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. SeeState v. Thompson, supra; State v. Hirsch (1998),129 Ohio App.3d 294, 717 N.E.2d 789. The admission or exclusion of relevant evidence will not be reversed absent an abuse of the trial court's discretion resulting in material prejudice to the defendant. See id.
 {¶ 44} Taylor took the stand in his own defense. Over defense counsel's objection, the prosecutor asked Taylor on cross-examination about his knowledge of guns. The prosecutor also asked Taylor whether he had ever handled or fired a gun, and whether he had ever seen his stepfather with a gun. Taylor testified that he had never fired a gun, and that he had only seen guns on television. Taylor then testified that he had seen Johnson with a gun. Taylor also stated that when he was about eleven or twelve years old, he had seen his stepfather purchase a gun. Taylor stated, in response to a question by the prosecutor, that he was unaware that on the day of the murders there had been handguns and ammunition in his home.
 {¶ 45} Taylor argues that the trial court erred in permitting the testimony of two rebuttal witnesses for the prosecution. One of the witnesses was the police officer who had searched Taylor's home pursuant to a warrant. The officer testified that he had recovered two handguns and some ammunition from the home. The officer further testified that all of the items had been found in Taylor's stepfather's room, and that none of the items had been used in the Turner and Starkey murders. Further, the officer testified that he had no information connecting Taylor with the items and no information that Taylor had any knowledge about the items.
 {¶ 46} We hold that the trial court erred in admitting the police officer's testimony. The testimony was improper rebuttal testimony because it did not rebut any testimony given by Taylor. Taylor stated that he had not known that there were any guns or ammunition in his home on the day of the murders. There was absolutely no evidence that Taylor knew about the items found in his stepfather's room. Further, there was no evidence connecting Taylor with any of the items. The evidence was clearly not admissible to prove any of the matters set forth in Evid.R. 404(B) or R.C. 2945.59, because it did not show any acts committed by Taylor. What little probative value the police officer's testimony may have had, if any, was clearly outweighed by the danger of unfair prejudice to Taylor. Therefore, the testimony should have been excluded pursuant to Evid.R. 403(A).
 {¶ 47} We hold that the trial court erred in admitting the rebuttal testimony of the police officer. However, in light of the overwhelming evidence against Taylor, we hold that the error was not prejudicial.
 {¶ 48} Taylor also argues that the trial court erred in admitting the rebuttal testimony of a witness who stated that sometime in the six to twelve months preceding the murders, he had been a passenger in Taylor's car when Taylor had almost hit a pedestrian. The witness testified that Taylor and the pedestrian had "had words" and that Taylor had "showed him a gun." Taylor and the witness then drove away, arguing about the wisdom of Taylor's actions.
 {¶ 49} In admitting the testimony, the trial court stated, "The only reason I'm letting this in is because the defendant has claimed that he never had a gun, didn't own a gun, didn't possess a gun. I'm letting this testimony in, not because of any previous crime or anything like that, but this man claims he saw him within the proximity of the date of the offense that he had a weapon in his hand."
 {¶ 50} We hold that the testimony was not admissible pursuant to Evid.R. 404(B) or R.C. 2945.59 because it did not tend to prove any of the matters enumerated in the rule or the statute.
 {¶ 51} Further, we hold that the evidence was inadmissible pursuant to Evid.R. 608(B), which provides in part that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than the conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
 {¶ 52} "It is apparent that specific instances of conduct, relating only to credibility of a witness, may not be established by extrinsic evidence. If this were not the rule, trials could potentially become bogged down in an interminable parade of witnesses called to testify as to specific instances of conduct of a prior witness in an attempt to contradict the prior witness's testimony on a purely collateral matter." State v.Boggs (1992), 63 Ohio St.3d 418, 588 N.E.2d 813, citing Statev. Leuin (1984), 11 Ohio St.3d 172, 464 N.E.2d 552.
 {¶ 53} The trial court in the instant case indicated that it was admitting the evidence for the purpose of impeaching Taylor's credibility. Apart from Evid.R. 609's exception for certain criminal convictions, a witness's credibility may not be impeached by extrinsic proof of specific instances of conduct. See State v. Kamel (1984), 12 Ohio St.3d 306, 466 N.E.2d 860, paragraph two of the syllabus; State v. Boggs, supra. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B). See id.
 {¶ 54} Assuming, for the purposes of argument, that the evidence about the prior incident with the gun was clearly probative of Taylor's truthfulness or untruthfulness so that it was properly the subject of cross-examination, the state was bound by Taylor's responses. See State v. Leuin, supra; Statev. Miller (Oct. 14, 1993), 4th Dist. No. 92 CA 496. The rebuttal testimony offered by the prosecution was clearly extrinsic, addressing specific instances of Taylor's conduct. The evidence was inadmissible pursuant to Evid.R. 608(B).
 {¶ 55} We hold that the trial court erred in admitting the rebuttal testimony about the prior incident involving a gun. We further hold that the error was harmless in light of the overwhelming evidence against Taylor. The fourth assignment of error is overruled.
 {¶ 56} Taylor's fifth assignment of error alleges that his convictions must be reversed because prosecutorial misconduct deprived him of a fair trial.
 {¶ 57} "In order to reverse a conviction based on prosecutorial misconduct, the alleged misconduct must have deprived the defendant of a fair trial. See State v. Fears,86 Ohio St.3d 329, 1999-Ohio-111, 715 N.E.2d 136; State v. Mauer
(1984), 15 Ohio St.3d 239, 473 N.E.2d 768. The prejudicial effect of the alleged misconduct must be considered in the context of the entire trial, and not simply the immediate context in which the misconduct occurred. See id." State v. Condon,152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696, at ¶ 66.
 {¶ 58} Taylor alleges prosecutorial misconduct in the introduction of improper "other acts" evidence and in the violation of the trial court's separation order. We have addressed these issues under the third and fourth assignments of error. For the reasons set forth under those assignments of error, we hold that Taylor has failed to show that any conduct of the prosecutor prejudicially affected his substantial rights or deprived him of a fair trial.
 {¶ 59} Taylor alleges prosecutorial misconduct in the revelation by the prosecutor for the first time in opening statement that the police had received a Crimestoppers tip the day after the murders indicating that Johnson had been in the car with Taylor. Taylor argues that this was favorable evidence that should have been disclosed by the prosecution.
 {¶ 60} We agree with the trial court that Taylor cannot show any prejudice because, as the trial court pointed out, Taylor knew that Johnson was in the car with him at the time of the murders. Taylor admitted that he and Johnson had been in the car together. In fact, Taylor blamed the murders on Johnson.
 {¶ 61} Taylor alleges that the prosecutors committed misconduct in questioning him about statements that he had made during a competency evaluation, in violation of R.C. 2945.371(J).
 {¶ 62} The record reveals that the prosecutor questioned Taylor about whether he had been seeing green visions, hearing voices or having hallucinations the day after the murders. Taylor was asked whether he had said that his brother was identified as Satan. Over defense counsel's objection, Taylor was permitted to answer, "No." When Taylor was asked whether he had told anyone that his daily life was one of seeking pleasure, drinking alcohol, smoking marijuana, and not concerning himself with finding work, the trial court sustained defense counsel's objection.
 {¶ 63} The portion of the cross-examination about which Taylor complains was a small part of the entire cross-examination. The prosecutor did not dwell on any of Taylor's answers to the questions. In addition, the trial court sustained defense counsel's objection to at least one of the questions. We hold that any error that may have occurred in the overruling of defense counsel's objections to some of the questions on cross-examination was not prejudicial and did not deprive Taylor of a fair trial in light of the overwhelming evidence against him.
 {¶ 64} Finally, Taylor argues that the prosecutor made improper remarks in his closing argument.
 {¶ 65} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. SeeState v. Smith, 87 Ohio St.3d 424, 2000-Ohio-450,721 N.E.2d 93; State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. Considerable latitude is generally afforded to the prosecutor in presenting closing arguments. See State v. Mauer, supra. The prosecutor's closing argument must be reviewed in its entirety to determine if any remarks were prejudicial. See State v. Keenan
(1993), 66 Ohio St.3d 402, 613 N.E.2d 203. The emphasis is on the fairness of the trial, not on the culpability of the prosecutor. See State v. Smith, supra.
 {¶ 66} We have reviewed the prosecutor's closing argument in its entirety. The argument was improper to the extent that the prosecutor urged the jury to consider the inadmissible "other acts" evidence as substantive proof of Taylor's guilt, and to the extent that the prosecutor used the "other acts" evidence to portray Taylor as a gun-carrying individual who had acted in conformity with his bad character in killing Turner and Starkey. Further, the suggestion by the prosecutor that, if Taylor had not been found guilty, then no one would ever be convicted for the murders was improper.
 {¶ 67} But we conclude, based on the overwhelming evidence against Taylor, that the jury would have found him guilty even in the absence of the improper remarks. We hold that the prosecutor's remarks did not prejudicially affect his substantial rights or deprive him of a fair trial. The fifth assignment of error is overruled.
 {¶ 68} The judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, J., concurs.
Painter, J., concurs separately.