[Cite as *State v. Stalder*, 2022-Ohio-1386.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| GLEN STALDER | : | Case No. 21-CA-26 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Municipal Court,
                                  Case No. 21-CRB-186


JUDGMENT:                         Reversed, Vacated, and Remanded


DATE OF JUDGMENT:                 April 26, 2022


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOSEPH M SABO                             ANDREW R. SANDERSON
136 West Main Street                      738 East Main Street
P.O. Box 1008                             Lancaster, OH  43130
Lancaster, OH  43130

*Wise, Earle, P.J.*

{¶ 1}   Defendant-Appellant Glen Stalder appeals the August 20, 2021 judgment of the Fairfield County Municipal Court finding him guilty of sexual imposition, a misdemeanor of the third degree. Plaintiff-Appellee is the state of Ohio.

### Facts and Procedural History

{¶ 2}   On February 21, 2021, 26-year-old J.R. was working at the Amanda Carryout where appellant was a regular customer. Appellant arrived at the store at 7:00 a.m., that day, got coffee and hung around for approximately two hours. During that time he was in and out of the store, going outside to talk to other people who were hanging around and then going back into the store to talk to J.R.

{¶ 3}   During that time appellant made J.R. uncomfortable by staring at her, licking his lips, and making moaning sounds. He told J.R. that a girl like her probably would not be into a guy like him. When appellant continued to loiter inside the store, J.R. busied herself stocking items in hopes appellant would leave the store. At a later point appellant blocked J.R.'s only path back to the register and motioned that he wanted a hug. J.R. complied, but instead of just giving J.R. a hug, appellant grabbed J.R.'s buttocks over her clothing, then let go and grabbed J.R.'s crotch over her clothing. Appellant was later charged with one count of sexual imposition pursuant to R.C. 2907.06(A)(1).

{¶ 4}   Appellant pled not guilty and opted to proceed to a jury trial which took place on July 29, 2021. During jury selection counsel for appellant advanced a *Batson* objection to the state's use of two peremptory challenges to remove prospective male jurors. The trial court found *Batson* inapplicable to gender and overruled the objections. At the

conclusion of evidence, the jury found appellant guilty. He was sentenced to 7 days in jail, a $500 fine, and a period of community control.

{¶ 5} Appellant filed an appeal and the matter is now before this court for consideration. He raises three assignments of error for our consideration as follow:

I

{¶ 6} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S REQUEST TO PRESENT EXCULPATORY EVIDENCE."

II

{¶ 7} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN PERMITTING THE INTRODUCTION OF CERTAIN EVIDENCE IN THE PROSECUTION OF THE CASE BELOW."

III

{¶ 8} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN SUMMARILY DENYING THE "BATSON" CHALLENGE RAISED BY THE DEFENDANT."

III

{¶ 9} We will address the third assignment of error which we find dispositive. In his third assignment of error, appellant argues the trial court committed error in denying his objections to state's gender-based peremptory challenges. We agree.

Applicable Law

{¶ 10} The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse a juror on account of their race or gender. See *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); *State v. Hernandez*, 63 Ohio St.3d 577, 581, 589 N.E.2d

1310, 1313, (1992) certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206; *J.E.B., Petitioner v. Alabama ex rel. T.B*, 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed2d 89 (1994) (*Batson* extended to include gender.)

{¶ 11} The United States Supreme Court has set forth a three-step procedure for evaluating a claim that a peremptory challenge is motivated by racial or gender discrimination. First, the party opposing the peremptory challenge must establish a prima facie case of purposeful discrimination in the exercise of the challenge. If a prima facie case has been established, the burden of production then shifts to the proponent of the challenge to tender a race or gender-neutral explanation. The trial court must then determine whether the challenge's opponent has carried its ultimate burden of proving purposeful discrimination. See *Hernandez v. New York*, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 1866-1867, 114 L.Ed.2d 395 (1991); *State v. Hernandez*, 63 Ohio St.3d 577, 581-582, 589 N.E.2d at 1313 (citing *Batson*, supra at 96-98, 106 S.Ct. at 1723-1724); *State v. Walker*, 139 Ohio App.3d 52, 742 N.E.2d 1173 (2000). A determination that the challenge's opponent has failed to prove purposeful discrimination will not be reversed on appeal unless that determination can be said to have been "clearly erroneous." *State v. Hernandez*, supra at 582-583, 589 N.E.2d at 1313-1314 (quoting *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991)).

{¶ 12} In *J.E.B. v. Alabama, ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the United States Supreme Court held that while the test outlined in *Batson* was originally intended to eliminate racial discrimination during jury selection, it must also be extended to include instances involving alleged gender discrimination. Regarding a jury's neutrality the Supreme Court observed the following:

When state actors exercise peremptory challenges in reliance on gender stereotypes, they ratify and reinforce prejudicial views of the relative abilities of men and women. Because these stereotypes have wreaked injustice in so many other spheres of our country's public life, active discrimination by litigants on the basis of gender during jury selection "invites cynicism respecting the jury's neutrality and its obligation to adhere to the law." *Powers v. Ohio*, 499 U.S., at 412, 111 S.Ct., at 1371. The potential for cynicism is particularly acute in cases where gender-related issues are prominent, such as cases involving rape, sexual harassment, or paternity. Discriminatory use of peremptory challenges may create the impression that the judicial system has acquiesced in suppressing full participation by one gender or that the "deck has been stacked" in favor of one side. See *id.*, at 413, 111 S.Ct., at 1372 ("The verdict will not be accepted or understood [as fair] if the jury is chosen by unlawful means at the outset").

{¶ 13} *Id.* at 140.

### Appellant's Arguments

{¶ 14} Appellant's complaints center on the state's use of two peremptory challenges to remove prospective jurors F.B. and J.C. During voir dire, the state asked J.C. how he would react if someone broke into his house at night. Transcript of trial (T.)

at 45. In exercising a peremptory challenge to remove J.C., the state cited J.C.'s answer

to that question. We are unable to determine from the record, however, whether or not

the state ever engaged prospective juror F.B in any questioning during voir dire.

{¶ 15} The following conversation took place during peremptory challenges:

> The Court: Very well. Both parties have passed on challenges for cause. Let's begin with peremptory challenges. On behalf of the State?
>
> [The State]: Your Honor, the State would excuse Juror no. 1296, [F.B.]
>
> The Court: All right, Juror 1296, [F.B] would be excused.
>
> [Counsel for Appellant]: Your Honor, at this time we'd ask the State to explain that challenge. We believe that they are doing it simply because he is a male and would tend to sympathize with my client.
>
> The Court: [Counsel for the State] – Well you're raising it simply because he is a male. I mean –
>
> [Counsel for Appellant]: Your Honor, I have a feeling that every one of the State's peremptory challenges is going to be a man who is a man in this case. I'm asking out of the box that they start justifying that before we get too far along this road.
>
> The Court: I don't know that any – that [F.B.] or any other men indicated any type of bias in favor of men.

[Counsel for Appellant]: Hence my point, Your Honor. I think the government –

The Court: Or in favor of women or --

[Counsel for Appellant]: I think the government is choosing to exclude jurors based on gender.

The Court: [Counsel for the State], what's your position.

[Counsel for the State]: No, Your Honor, there is no reason to do so. They've all indicated that they'd be able to be fair and impartial. They answered questions that I asked satisfactorily. It's just a matter of elimination on which jurors I think are most appropriate for this case. I don't believe that all the jurors that I would excuse are going to be male.

[Counsel for Appellant]: Judge, *Batson* requires them to be able to demonstrate that there is a reason beyond the fact that he's male and they haven't justified that at all.

The Court: First of all, doesn't it have to be a protected class, [counsel for appellant?]

[Counsel for appellant]: Yeah, gender is a protected class.

The Court: And when you talk about gender being a protected class, simply I don't believe he indicated he was in anyway binary or anything else that would – I'm not buying your argument here. I'm granting the peremptory challenge. I don't think there is a *Batson*

issue in this matter and I think prolonging that is not going to make this trial go away.

[Counsel for Appellant]: I'm not asking that this trial go away, Your Honor.

The Court: Well, I understand that, but it's not a basis – in this Court's opinion there is not a *Batson* issue. This is not a situation where [F.B.] is in a protected class that would be subject to a *Batson* decision. Period.

[Counsel for appellant]: I understand Your Honor.

The Court: Okay. Just so we're all on the same page. Alright. Peremptory challenge on behalf of the Defense?

[Counsel for appellant]: I'm going to excuse [J.N.], 1307, Your Honor.

The Court: Very well. Juror no. 1307, [J.N.] will be excused. Peremptory challenge on behalf of the State?

* * *

[Counsel for the state] Your Honor, the State would excuse Juror no. 1297, [J.C.].

[Counsel for appellant]: Renew the same objection, Your Honor.

The Court: Very well.

[Counsel for the state]: I can provide an explanation, Your Honor.

The Court: Well, I don't know that one is necessary, but if you wish to provide one, you may.

[Counsel for the state]: Just in terms in his response and how he would react in a stressful situation.

The Court: All right. But regardless, Juror no. 1297, [J.C.] will be excused.

* * *

[Counsel for appellant]: Yes, Your Honor, and I would proffer on the record that both of the peremptory challenges by the government were male.

The Court: And I recognize that they were both male. I'm also believing that a peremptory challenge, that they are not traditionally a class of individuals – white males are not traditionally a class of individuals who have been in some way, shape, or form excluded from juries because of their status as a white male. So your objection previously was overruled and it remains overruled.

{¶ 16} Transcript of trial (T.) at 64-67.

{¶ 17} The final composition of the jury was six females and three males.

{¶ 18} Upon the state's first peremptory challenge to excuse F.B., counsel for appellant established a prima facie case of purposeful discrimination in the state's exercise of the challenge. The state, while providing and explanation, was not prompted by the trial court to do so, and further, did not provide a gender-neutral explanation. The state argues here that because it was its first peremptory challenge, appellant cannot

argue there was a pattern of challenges against male-only jurors. But the Supreme Court of Ohio has found otherwise:

> The existence of a pattern of discriminatory strikes is not a prerequisite either to finding a prima facie case in step one of the *Batson* analysis or to finding actual discrimination in step three. Such a rule would ignore *Batson's* requirement that the trial court consider all the circumstances in determining whether racial discrimination occurred. It would also mean that no *Batson* challenge could succeed unless the prosecutor challenged more than one member of the group in question. Such a rule would license prosecutors to exercise one illegal peremptory strike per trial. The law of equal protection does not allow "one free bite."

{¶ 19} *State v. White*, 85 Ohio St.3d 433, 436, 709 N.E.2d 140, 1999-Ohio-281.

{¶ 20} The bigger issue here, however, is that the trial court never considered the merits of appellant's objections or the state's responses because it found *Batson* inapplicable to white males. T. 66, 69. The third step of the *Batson* test requires the trial court to determine whether or not the defendant proved that the peremptory strike was purposeful discrimination. *State v. Blackshear*, 8th Dist. Cuyahoga No. 108916, 2020-Ohio-3187 ¶ 20. "The trial court must examine the peremptory challenge in context to ensure the offered race-neutral reasoning is not simply pretextual." *State v. Fraizer*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. The trial court considers the

persuasiveness of the state's reasoning, but the opponent bears the burden of persuasion regarding racial motivation. *Id.*

{¶ 21} If a trial court errs in applying *Batson*, the error is structural. See *United States v. McFerron*, 163 F.3d 952, 955-956 (6th Cir.1998) (cataloging federal appeals courts that have unanimously and "resoundingly" rejected arguments that *Batson* errors are subject to harmless-error review); *State v. Thompson*, 141Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 53 citing *McFerron*; State v. Pickens, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 64 citing *McFerron*.

{¶ 22} Upon consideration of the record in this matter and the applicable law we find the trial court erred as a matter of law in finding the requirements of *Batson* inapplicable to instances of alleged gender discrimination and by further failing to require the state to provide a gender-neutral explanation for the exclusion of two male prospective jurors. Appellant's third assignment of error is sustained.

{¶ 23} Given our resolution of appellant's third assignment of error, his first and second assignments of error are moot.

{¶ 24} The judgment of the Fairfield County Municipal Court is reversed. Appellant's conviction is vacated and the matter is remanded for a new trial.


By Wise, Earl, P.J.

Wise, J., J. and

Baldwin, J. concur.


EEW/rw