[Cite as *State v. Woods*, 2014-Ohio-3892.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-130413 |
| | | C-130414 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1100377 |
| | | B-1100741 |
| vs. | : | |
| | | *O P I N I O N.* |
| RICARDO WOODS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  September 10, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Jennifer M. Kinsley,* for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}     Defendant-appellant Ricardo Woods appeals the judgments of the Hamilton County Court of Common Pleas convicting him of the murder of David Chandler, a firearm specification, and two counts of felonious assault.  He was convicted of those offenses and the specification after a jury trial.  Woods also appeals his conviction for having a weapon while under a disability, a charge that was tried to the court.

### A History of Addiction

{¶2}     David Chandler was addicted to heroin and crack cocaine.  On the evening of October 27, 2010, Chandler was smoking crack cocaine with his live-in companion James Spears and their friend William Smith.

{¶3}     When the three ran out of crack cocaine, they made plans to obtain more.  They first drove to the home of Father Philip Seher, a Catholic priest who was the payee for Chandler's social-security benefits.  After a brief stay at Father Seher's home to get cash, they went to an area of downtown Cincinnati where Chandler had bought drugs on numerous occasions.  Spears was driving the car, Chandler was in the front passenger seat, and Smith was in the back seat behind Chandler.

{¶4}     When they got to the area of downtown near Linn and York streets, Chandler attempted to summon one of his known dealers.  As they were parked on the street, a man approached the car.  Spears could see the man only from the shoulders down and could state only that he was African-American.

{¶5}     According to Spears, the man had said, "Hey Chandler, where's my money?" immediately before opening fire into the car.  One of the shots severed the cervical area of Chandler's spinal cord.  As the gunman continued firing into the rear

2

of the car, Spears drove away, eventually taking Chandler to Good Samaritan Hospital. The police recovered nine spent ammunition casings and one fired bullet from the scene of the shooting. The car had been shot multiple times, and the rear passenger-side window had been shattered.

{¶6} In light of the severity of his injuries, Chandler was transported to the University of Cincinnati Medical Center. Paralyzed from the neck down and unable to breathe on his own, Chandler was placed on life-support apparatus.

{¶7} After a prolonged period of unconsciousness, Chandler awoke and showed signs of alertness. Because he was unable to talk, medical personnel devised a system of communication in which Chandler would blink his eyes a certain number of times in response to questioning.

{¶8} Several witnesses who had seen Chandler in the hospital testified that his responses were usually coherent and demonstrated that he was aware of his surroundings and circumstances. Father Seher, Chandler's brother Richard Tucker, and Dr. Delanie Janke all testified that Chandler had responded appropriately to their questions about his medical condition and other matters. That testimony was corroborated by nurse Bryan Burger, with Burger adding the caveat that the appropriateness of Chandler's responses diminished to approximately 50 percent when he was sedated for medical treatment or when he was given pain medication.

{¶9} One day in early November, Father Seher visited Chandler to discuss his medical prognosis. According to Father Seher, Chandler did not believe that he would survive his injuries. At Chandler's request, Father Seher administered the Sacrament of Last Rites. Father Seher testified that Chandler's responses on that day were consistently appropriate, and he had no doubt that Chandler was aware of the gravity of his medical condition.

{¶10} Near the time that he expressed the belief that he would not survive his injuries, Chandler had responded in the affirmative when Tucker had asked him if he could identify the person who had shot him. Tucker then contacted the police. Based on the information that Chandler had provided, the police asked him to blink on the letter of the alphabet that corresponded with the shooter's nickname. Chandler blinked affirmatively on the letter "O," which was one of Woods's street names. After Chandler had blinked affirmatively on "O," the police showed him a photograph of Woods, and Chandler identified Woods as the man who had shot him.

{¶11} On November 12, 2010, Chandler died from an aneurysm caused by his spinal injury.

{¶12} Spears testified that Chandler had bought drugs from Woods on numerous occasions and that he had owed Woods money. According to Spears, Woods had seemed angry with Chandler over his debts in the days preceding the shooting, and Woods had threatened Chandler.

{¶13} Woods was arrested in Lorain, Ohio, in January 2011. While being held at the Hamilton County Justice Center, Woods met Jermaine Beard. At trial, Beard testified that Woods had confessed to having shot a person because of a drug debt.

{¶14} The defense presented the testimony of psychologist Dr. Jennifer Dysart, who testified that the circumstances of the crime and the identification process used by the police tended to discredit Chandler's identification of Woods as the perpetrator.

{¶15} Woods also presented the testimony of Marvin H. Rorick, M.D., a neurologist who had examined Chandler's medical records and who had viewed the video footage of Chandler identifying Woods as the shooter. Dr. Rorick testified that,

4

in light of the injuries and the medication administered to Chandler, he "was not convinced that [Chandler] had the capacity" to make a proper identification. Similarly, emergency physician Anthony Abdullah, M.D., testified that, based on the video and his review of Chandler's medical records, he did not believe Chandler capable of accurately identifying someone in a photograph.

{¶16}     After the jury and the trial court had rendered guilty verdicts, the court sentenced Woods to a prison term of 15 years to life for murder; to two terms of eight years' imprisonment for felonious assault; to 24 months' imprisonment for having a weapon while under a disability; and to three years' imprisonment for the firearm specification.     The court ordered all of the sentences to be served consecutively.

### The Admission of Chandler's Identification

{¶17}     In his first assignment of error, Woods contends that the trial court erred in admitting into evidence Chandler's identification of Woods as the perpetrator.   We first address Woods's argument that the admission of the identification violated his rights under the Confrontation Clause of the United States Constitution and that the identification constituted inadmissible hearsay.

{¶18}     The Confrontation Clause of the Sixth Amendment generally prohibits the admission of testimonial statements of a witness who did not testify at trial, unless the witness was unavailable for trial and the defendant had had the prior opportunity to cross-examine the witness.  *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶19}     But in *Crawford,* the court held that a dying declaration was one exception to this rule of inadmissibility.  *Id.* at 56, fn. 6.  As this court has recently held, dying declarations may be admitted as an exception to the rule set forth in

*Crawford,* irrespective of whether the declaration is considered testimonial. *State v. Kennedy,* 2013-Ohio-4221, 998 N.E.2d 1189, ¶ 64 (1st Dist.).

{¶20} In *Kennedy,* we held that Evid.R. 804(B)(2) comports with the common-law definition of a dying declaration when analyzing the exception to the rule in *Crawford. Id.* at ¶ 67. Evid.R. 804(B)(2) provides that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> [i]n a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant, while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death.

{¶21} In *Kennedy,* this court stated that, to qualify as a dying declaration under the rule, "the evidence must show that the deceased's statements were made under a sense of impending death that excluded from the mind of the dying person all hope or expectation of recovery." *Kennedy* at ¶ 41, citing *State v. Ray,* 189 Ohio App.3d 292, 2010-Ohio-2348, 938 N.E.2d 378, ¶ 40 (8th Dist.); *State v. Washington,* 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, ¶ 21; *State v. Ross,* 7th Dist. Mahoning Nos. 96-CA-247 and 96-CA-251, 1999 Ohio App. LEXIS 4859 (Oct. 12, 1999), cited in *State v. McGee,* 7th Dist. Mahoning No. 07-MA-137, 2009-Ohio-6397, ¶ 33. The declarant is not required to state that he believes he will not recover, as "the necessary state of mind may be inferred from circumstances at the time of the declaration." *Kennedy* at ¶ 42, citing *Ross, supra.*

{¶22} In this case, Chandler's statement was properly admitted as a dying declaration. According to Father Seher, Chandler was convinced that he was not going to survive his injuries, as Chandler requested the sacrament of Last Rites. And while Chandler's family had made contingent plans for rehabilitation in case

Chandler would survive, the state presented ample evidence that Chandler himself had no hope of recovery.

{¶23}   Woods next argues that the trial court erred in overruling his motion to suppress the identification because the procedure employed by the investigating officers was unduly suggestive.

{¶24}   Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   An appellate court must accept the trial court's findings of fact if they are supported by some competent, credible evidence. *Id.*   Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's judgment, whether the facts satisfy the applicable legal standard. *Id.*

{¶25}   To suppress identification testimony, the trial court must find that the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *State v. Green*, 117 Ohio App.3d 644, 652, 691 N.E.2d 316 (1st Dist.1996). "Reliability is the linchpin in determining the admissibility of identification testimony * * *." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).   Thus, even if the identification procedure was suggestive, so long as the challenged identification was reliable, it is admissible. *Id.; State v. Seay*, 1st Dist. Hamilton No. C-090233, 2010-Ohio-896, ¶ 29.

{¶26}   In this case, the trial court properly held that the identification was reliable.   The state presented evidence that Chandler had known Woods for a long period of time and had repeatedly purchased drugs from Woods in the area where the shooting had occurred.   And it was through Chandler's prompting that the investigating officers had brought the photograph of Woods to the hospital.

{¶27}     Nonetheless, Woods contends that the identification was subject to suppression in light of the investigating officers' alleged failure to comply with the identification procedures set forth in R.C. 2933.83. But as this court has held, an alleged violation of R.C. 2933.83 is not a proper basis for suppression, as the remedy for such a violation is cross-examination about the police procedures at trial. *State v. Cook,* 1st Dist. Hamilton No. C-130242, 2013-Ohio-5449, ¶ 33, citing *State v. Ruff,* 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 5; R.C. 2933.83(C)(1). Accordingly, the trial court did not err in admitting the identification, and we overrule the first assignment of error.

### *Batson* Challenges

{¶28}     In his second assignment of error, Woods argues that the state exercised peremptory challenges during voir dire in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After the first peremptory challenge of a prospective African-American juror, the trial court stated that Woods had not yet established a pattern of discrimination. Woods argues that he was not required to establish a pattern of discrimination to trigger the state's burden to provide a race-neutral explanation for the challenge.

{¶29}     In *Batson,* the court created a three-part test to determine if the state has used peremptory challenges in a discriminatory manner. The opponent of the challenge must first make a prima facie showing of discriminatory intent. *See State v. Were,* 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 61. If the trial court finds the first requirement fulfilled, the state must then provide a racially neutral explanation for the challenge. *Id.* Finally, the court must decide whether, under all of the circumstances, the opponent has demonstrated racial discrimination. *Id.* A trial court's finding that the opponent has failed to prove discriminatory intent will not be reversed unless it is clearly erroneous. *State v. Hernandez,* 63 Ohio St.3d

577, 583, 589 N.E.2d 1310 (1992), following *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

{¶30}     Woods is correct in his assertion that the opponent of a peremptory challenge is not required to demonstrate a pattern of discrimination.  *State v. Walker,* 139 Ohio App.3d 52, 56, 742 N.E.2d 1173 (1st Dist.2000).  As we have held, "[t]he exercise of even one peremptory challenge in a purposefully discriminatory manner is a violation of equal protection."  *State v. Taylor,* 1st Dist. Hamilton No. C-020475, 2004-Ohio-1494, ¶ 20, citing *State v. Gowdy,* 88 Ohio St.3d 387, 727 N.E.2d 579 (2000), and *Walker, supra.*  Thus, the trial court did err in concluding that Woods was required to demonstrate a discriminatory pattern.

{¶31}     But the court rectified its error by requiring the state to provide a race-neutral explanation for the first challenge after the state had exercised a second peremptory challenge of an African-American.  *See State v. Tibbs,* 1st Dist. Hamilton No. C-100378, 2011-Ohio-6716, ¶ 24.  Specifically, the state cited answers given by the first challenged juror suggesting that she would hold the state to a higher standard than required by law with respect to identification testimony.  As for the second juror, the state noted that she had described herself as an honest person but then conceded that she had been convicted of an offense involving dishonesty.  The trial court's acceptance of those explanations was not clearly erroneous.  We overrule the second assignment of error.

### Discovery

{¶32}     In his third assignment of error, Woods maintains that the trial court erred in certifying two state's witnesses for nondisclosure.

{¶33}     Crim.R. 16 governs discovery in general and witness disclosure in particular.  Crim.R. 16(I) states that "[e]ach party must provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call

9

in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." But under Crim.R. 16(D)(1), "[t]he prosecuting attorney shall certify to the court that the prosecuting attorney is not disclosing material" that is otherwise subject to disclosure if he "has reasonable, articulable grounds to believe that disclosure will compromise the safety of a witness * * *."

{¶34} Among the reasons for nondisclosure, the prosecution may cite "the nature of the case, the specific course of conduct of one or more parties, [and] threats or prior instances of witness tampering or intimidation * * *." Crim.R. 16(D). The trial court may not reject the prosecuting attorney's certification for nondisclosure unless it finds that the prosecution has abused its discretion. Crim.R. 16(F). This court, in turn, reviews a trial court's decisions concerning discovery—including issues of witness disclosure—under an abuse-of-discretion standard. *State v. Williams,* 1st Dist. Hamilton No. C-130277, 2014-Ohio-1526, ¶ 14.

{¶35} In the case at bar, there was no abuse of discretion. With respect to one of the witnesses, the trial court conducted a hearing in which the state presented case-specific evidence that disclosure of the witness's identity would threaten his safety and the safety of his family and friends. This witness was in fact murdered before trial. And as the state correctly asserts, there was no showing that the witness in question would have provided exculpatory evidence or that Woods was otherwise prejudiced by the nondisclosure.

{¶36} The second witness subject to a nondisclosure order was Beard. The assistant prosecutor once again provided case-specific information that the witness feared for his safety, and the court ordered the state to provide Beard's identity to the defense no later than the commencement of trial, as provided in Crim.R. 16(F)(5). Woods has not demonstrated an abuse of discretion on the part of

the prosecuting attorney or the trial court, and we overrule the third assignment of error.

## Limitation of Expert Testimony

{¶37} In his fourth assignment of error, Woods contends that the trial court erred in limiting the testimony of his expert witnesses. He first argues that the court erred in restricting the testimony of psychologist Dr. Dysart. Although Dr. Dysart was permitted to testify about the factors in this case that would have impeded Chandler's ability to identify his assailant, Woods argues that the court erred in precluding Dysart from rendering an opinion on the ultimate issue of Chandler's credibility.

{¶38} Evid.R. 704, along with Evid.R. 702, 402, and 403, generally permits the admission of expert testimony on an ultimate issue to be decided by the trier of fact. *See State v. Campbell,* 1st Dist. Hamilton Nos. C-010567 and C-010596, 2002 Ohio App. LEXIS 1158 (Mar. 15, 2002). And the expert testimony of an experimental psychologist concerning variables or factors that may impair the accuracy of a typical eyewitness identification is admissible under Evid.R. 702. *State v. Buell,* 22 Ohio St.3d 124, 489 N.E.2d 795 (1986), paragraph one of the syllabus. But testimony of such an expert regarding the credibility of a *particular* witness is inadmissible under Evid.R. 702, absent a showing that the witness suffers from a mental or physical impairment that would affect his ability to observe or recall events. *Id.* at paragraph two of the syllabus.

{¶39} Under *Buell,* we review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Id.* at 133. In addition, under Evid.R. 402, the trial court retains the discretion to exclude even relevant evidence if it would unduly waste time or confuse the issues. *Id.*

{¶40}     In this case, we find no abuse of discretion. Although the evidence indicated that Chandler had been smoking crack cocaine on the night of the shooting, the state demonstrated that the effects of the drug would have dissipated by the time the gunman approached the car. There was also an indication in Chandler's medical chart that he had suffered from oxygen deprivation and its attendant effects on his mental functioning, but Jordan Bradley Bonomo, M.D., a neurointensivist who had treated Chandler, testified that the notation in the chart had been erroneous.

{¶41}     Moreover, Dr. Dysart herself conceded that the statistical data she had compiled with respect to the factors affecting the reliability of identification in general could not be used to predict or assess the identification made by a particular witness. Thus, the trial court could have reasonably concluded that Dysart's opinion concerning Chandler's credibility would have confused the issues or misled the jury.

{¶42}     Finally, the defense was permitted, through the testimony of Dr. Rorick and Dr. Abdullah, to adduce expert evidence about the credibility of Chandler's identification. Thus, the exclusion of similar evidence proffered by Dr. Dysart cannot be said to have resulted in material prejudice to Woods.

{¶43}     Woods next argues that the trial court erred in rejecting the testimony of a law professor on the issue of jailhouse informant Beard's credibility. Woods proffered that the professor would have testified about the inherent deficiencies in the testimony of jailhouse informants in light of the widespread exchange of favorable testimony for reduced sentences.

{¶44}     To be admissible, an expert opinion must first relate "to matters beyond the knowledge or experience possessed by laypersons" or dispel "a misconception common among laypersons * * *." *See State v. Garrett,* 1st Dist. Hamilton No. C-090592, 2010-Ohio-5431, ¶ 35. And, once again, a trial court's

12

determination of admissibility under Evid.R. 702 will not be reversed absent an abuse of discretion. *Id.*

{¶45}     In this case, we find no abuse of discretion. Woods was permitted to cross-examine Beard at length about jailhouse informants in general, about his previous cooperation with the police, and about his expectation that he would benefit from his testimony in this case. We are not persuaded that the proffered expert testimony would have further illuminated the subject for the jury, and we overrule the fourth assignment of error.

### Beard's Testimony

{¶46}     In his fifth assignment of error, Woods argues that the trial court erred in permitting Beard to testify about Woods's alleged confession to the offenses. Woods first maintains that Beard was acting as an agent of the state and that the admission of the confession violated Woods's right to counsel under the Sixth Amendment. *See United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

{¶47}     We find no merit in this argument. At a hearing on this issue, the evidence indicated that, although Beard had worked with the police in the past, he was not acting on behalf of the state or at the state's direction when Woods made the statement about the shootings in this case.

{¶48}     Woods next argues that the court erred in failing to hold a credibility hearing before Beard was permitted to testify. Again, this argument is without merit. Beard's credibility was for the jury to determine, and Woods was permitted to cross-examine him extensively about his involvement with the police and his expectation that he would benefit from testifying against Woods. Moreover, the jury was properly instructed to consider a witness's bias or interest in determining credibility. It was not incumbent on the trial court to hold a separate

hearing on the issue. *See State v. Howard,* 1st Dist. Hamilton No. C-100240, 2011-Ohio-2862, ¶ 46.

{¶49} Woods also contends that the trial court erred in restricting his cross-examination of Beard with respect to an alleged prior violent crime involving an elderly victim. But because the questioning involved only a charge against Beard, as opposed to a conviction, Woods can demonstrate no error. Evid.R. 609; *State v. Rodriquez,* 31 Ohio App.3d 174, 176, 509 N.E.2d 952 (9th Dist.1986). We overrule the fifth assignment of error.

### Exclusion of Chandler's Medical Records

{¶50} In his sixth assignment of error, Woods argues that the trial court erred in excluding from evidence portions of Chandler's medical and psychiatric records. Specifically, the court excluded records from 2004 indicating that Chandler had psychiatric disorders and a history of drug abuse. Woods sought to introduce the records to cast doubt on Chandler's ability to identify his assailant.

{¶51} The decision to admit or exclude a victim's medical records will not be reversed absent an abuse of discretion. *See State v. Kidd,* 11th Dist. Portage No. 2006-P-0087, 2007-Ohio-6562, ¶ 59. Here, the trial court did not abuse its discretion. Woods simply could not demonstrate a connection between Chandler's psychiatric condition in 2004 and his ability to identify his assailant in 2010. Thus, the trial court reasonably concluded that the evidence was not relevant under Evid.R. 401. We overrule the sixth assignment of error.

### Performance of Trial Counsel

{¶52} In his seventh assignment of error, Woods maintains that he was deprived of the effective assistance of trial counsel. To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose

14

from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶53} In this case, we find no deficiency on the part of trial counsel. Woods first argues that counsel was deficient in failing to present the statement of the deceased witness discussed under the third assignment of error. But as the state correctly notes, that witness had identified the shooter as "Carlos" or "Los," which were two of Woods's nicknames. Thus, the statement of the witness would have bolstered the state's contention that Woods was the perpetrator. There was simply no deficiency in defense counsel's failure to pursue the issue.

{¶54} Woods next argues that counsel was derelict in failing to more diligently discredit the testimony of Beard. As we have already noted, counsel vigorously challenged both the admissibility and the credibility of Beard's testimony, and we can discern no lack of skill or diligence in counsel's handling of the issue.

{¶55} Woods also maintains that counsel failed to appropriately attack the credibility of Chandler's identification under R.C. 2933.83. Again, we find no merit to this claim. Counsel consistently attacked the identification procedure used by the officers, both by cross-examining the officers and by offering expert testimony concerning the suggestiveness of the procedure. Woods's inability to obtain suppression of the identification as a result of the officers' alleged violation of the statute was not the result of counsel's deficiency; suppression was simply not an available remedy. *See Cook,* 1st Dist. Hamilton No. C-130242, 2013-Ohio-5449*,* and *Ruff,* 1st Dist Hamilton No. C-110250, 2012-Ohio-1910*.*

{¶56} Next, Woods argues that counsel was ineffective in the presentation of the testimony and report of Dr. Dysart. Specifically, he argues that counsel failed to pursue the issue of nonstranger identification. But Woods has not

specifically identified what Dr. Dysart could have added to her testimony or report to further discredit Chandler's identification of Woods as his assailant and has therefore failed to demonstrate prejudice.

{¶57} Finally, Woods argues that counsel was ineffective in failing to object to instances of prosecutorial misconduct in closing argument. Specifically, he argues that his attorneys should have objected to the assistant prosecutor's argument that the investigating officers had not violated R.C. 2933.83. As we discuss under the ninth assignment of error, there was no prejudice resulting from the comments on the statutory procedures.

{¶58} In sum, we find no deficiency on the part of trial counsel, and we overrule the seventh assignment of error.

### Jury Instructions

{¶59} In his eighth assignment of error, Woods argues that the court erred in instructing the jury. He first argues that the court improperly instructed the jury on the issue of flight.

{¶60} An instruction on flight as it relates to a defendant's consciousness of guilt is proper if there is sufficient evidence of escape or some affirmative attempt to avoid apprehension. *State v. Robinson,* 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 19, citing *State v. Brundage,* 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 17. A trial court's decision to instruct the jury on flight will not be reversed absent an abuse of discretion. *Robinson* at ¶ 19, citing *Brundage* at ¶ 18.

{¶61} Here, we find no abuse of discretion. The state presented evidence that Woods had been a long-time resident of Cincinnati and in particular of the area in which the shooting had occurred. In light of his capture several months later in the vicinity of Cleveland, we cannot say that the instruction on flight was arbitrary, unreasonable, or unconscionable.

16

{¶62}     Woods also contends that the court erred in failing to instruct the jury on the state's alleged failure to comply with the identification guidelines contained in R.C. 2933.83.  R.C. 2933.83(C) states that:

> When evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section, is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup.

We first reiterate that this was not a situation in which the victim was attempting to identify an unknown assailant from a lineup; the state presented evidence that Chandler had bought drugs from Woods on numerous occasions and that Chandler had prompted the investigation of Woods when he informed Richard Tucker that he could identify the perpetrator.  Thus, the single-photo procedure did not result in the likelihood of misidentification.  *See State v. Johnson,* 1st Dist. Hamilton No. C-090413, 2010-Ohio-3861, ¶ 24.

{¶63}     Moreover, the trial court instructed the jury in this case that a single-photograph presentation "is generally considered suggestive."  Accordingly, even though the court did not identify the statute by its Revised Code section, the jury was instructed that the procedures used by the officers could be considered in determining the reliability of the identification.  We find no error in the instructions, and we overrule the eighth assignment of error.

**Prosecutorial Misconduct**

{¶64}     In his ninth assignment of error, Woods contends that he was deprived of a fair trial by prosecutorial misconduct.  The test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights.  *State v. Glenn,* 1st Dist. Hamilton No. C-090205, 2011-Ohio-829, ¶ 52, citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984), and *State v. Canyon,* 1st Dist. Hamilton Nos. C-070729, C-070730 and C-070731, 2009-Ohio-1263, ¶ 17.

{¶65}     Woods first argues that, during closing argument, the assistant prosecutor improperly alluded to portions of Spears's prior statement to police after the trial court had excluded those portions from evidence.  The issue surrounding the prior statement was the extent to which Chandler had known Woods before the night of the shooting.

{¶66}     We find no impropriety.  The prosecutor made reference to the excluded portions only in response to defense counsel's playing of a portion of the statement in which Spears failed to mention Chandler's relationship with Woods. The state's reference to the statement was thus merely intended to rebut the implication that Spears had fabricated his testimony about the relationship. Moreover, because the trial court instructed the jury to consider only those items that had been admitted into evidence, we cannot say that Woods was prejudiced by the state's comments.  *See generally State v. Ruff,* 1st Dist. Hamilton No. C-120844, 2013-Ohio-5892, ¶ 16.

{¶67}     Woods next argues that the assistant prosecutor improperly informed the jury that the investigating officers had not violated R.C. 2933.83 by using a single-photograph identification procedure.  Once again, we find no prejudice in the comments.  As we have already held, the trial court properly

instructed the jury about the identification procedure, and we must presume that the jury followed those instructions. *Id.* Accordingly, we overrule the ninth assignment of error.

**Sufficiency and Weight of the Evidence**

{¶68} In his tenth assignment of error, Woods argues that his convictions were based on insufficient evidence and were against the manifest weight of the evidence.

{¶69} In reviewing the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Waddy*, 63 Ohio St.3d 424, 430, 588 N.E.2d 819 (1992). To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶70} R.C. 2903.02(B), governing murder, states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The underlying felony in this case was felonious assault under R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." For the attempted shooting of Smith and Spears, Woods was convicted of felonious assault under R.C. 2903.11(A)(2), which states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶71} In this case, the convictions were in accordance with the evidence. Chandler identified Woods as the person who had fired multiple shots into the car and who had inflicted the injury that ultimately proved to be fatal. Beard's testimony corroborated Chandler's identification. The number of shots fired into the car—and in particular those fired into the rear window—indicated that Woods had attempted to harm all of the car's occupants. Finally, it was undisputed that Woods was under a legal disability at the time of the offenses. We cannot say that the jury or the trial court created a manifest miscarriage of justice in finding Woods guilty, and we overrule the tenth assignment of error.

### Sentencing

{¶72} In his eleventh and final assignment of error, Woods argues that the court erred in its sentence. He contends that the trial court erred by failing to consider the proper statutory factors before imposing consecutive sentences.

{¶73} Under R.C. 2929.14(C)(4), the court must first find that consecutive sentences are necessary to protect the public or to punish the offender. Second, the court must find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must find that at least one of the following applies: (1) that the offender committed one or more of the offenses while awaiting trial or sentencing, while under a community-control sanction, or on postrelease control; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the offenses was so great or unusual that no single prison term would adequately reflect the seriousness of the offender's conduct; or (3) that the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 15.

{¶74}     An appellate court may not reverse a sentence unless it is clearly and convincingly contrary to law.     *See* R.C. 2953.08(G)(2); *State v. White,* 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).   We must presume that the court considered all relevant sentencing factors unless the defendant affirmatively demonstrates that the court had failed to do so.  *State v. Brown,* 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 46.

{¶75}     Here, the trial court made the requisite findings for the imposition of consecutive sentences, and those findings were supported by the record.  The trial court explicitly considered the seriousness of the instant offenses, Woods's deplorable criminal record, and other relevant circumstances.

{¶76}     But during the pendency of these appeals, the Supreme Court of Ohio held that a trial court must not only make the statutory findings at the sentencing hearing, but must also incorporate those findings into its sentencing entry.  *State v. Bonnell,* ___Ohio St.3d ___, 2014-Ohio-3177, ___ N.E.3d ___, syllabus. Nonetheless, because the failure to incorporate the findings into the sentencing entry is considered a clerical mistake, the court may correct the error in a nunc pro tunc entry to reflect what happened in open court.  *Id.*  at ¶ 30.  In this case, the court made the requisite findings in open court but did not incorporate those findings into its sentencing entries.  Thus, we sustain the eleventh assignment of error only to the extent that the trial court failed to include the statutory findings in its sentencing entries.  Otherwise, we overrule the eleventh assignment of error.

## Conclusion

{¶77}     We remand the cause for the trial court to incorporate its sentencing findings into its judgment entries of conviction.  In all other respects, we affirm the judgments of the trial court.

Judgments affirmed and cause remanded.

21

**HENDON** and **FISCHER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.