[Cite as *State v. Hammond*, 2017-Ohio-8574.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105297**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RAMAL HAMMOND**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-586371-A

**BEFORE:** S. Gallagher, J., McCormack, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** November 16, 2017

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road, Suite 405
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Brent Kirvel
Assistant Prosecuting Attorney
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant Ramal Hammond appeals his conviction for murder, two counts of felonious assault, and having a weapon while under disability, and the trial court's determination that he was competent to stand trial. Upon review, we affirm.

{¶2} Appellant was indicted on multiple counts relating to the alleged murder of Jamal Rolling ("the victim"). Within 24 hours of the victim being shot, appellant was shot and suffered a traumatic brain injury that caused severe cognitive impairment, including amnesia for the time surrounding the events involved in this matter. Appellant was evaluated for competency, and a competency hearing was held by the trial court. On June 27, 2016, the trial court issued a journal entry with a detailed decision finding appellant competent to stand trial.

{¶3} Appellant waived his right to a jury trial, and the case proceeded to a bench trial. Fifteen witnesses were called to testify by the state. Appellant chose not to testify.

{¶4} The record reflects that the victim was shot and killed in the early morning hours of April 14, 2014, shortly after leaving his girlfriend's apartment with appellant, who had come to the window. Although there were no eyewitnesses to the shooting, several witnesses placed the victim with appellant prior to the shooting, there was evidence that appellant left the scene and returned without a jacket he had been wearing, and there was evidence that the victim repeated appellant's name to his girlfriend before losing consciousness.

{¶5} The victim's girlfriend testified that after hearing the gunshot, she looked out the window and saw the victim trying to run toward her house, and that by the time she made it to him, he collapsed to the ground, and he kept saying "Ramal, Ramal." Two other witnesses testified to seeing appellant and the victim walking off by themselves several minutes before hearing the shooting. The men had approached them and asked for a shell for smoking

marijuana. Fifteen to twenty minutes after appellant and the victim walked away together, a gunshot was heard followed shortly after by a scream. The victim was observed on the ground mumbling to his girlfriend with blood coming out of his mouth.

{¶6} Testimony and evidence of the crime scene reflected that the victim had traveled several hundred feet before collapsing. The medical examiner confirmed that this would have been possible and that it would have been possible for the victim to verbalize before losing consciousness, though he would expect the individual to lose consciousness immediately or within a few seconds of collapsing.

{¶7} DNA from a firearm found at the scene matched the victim. The firearm was fully loaded with one round in the chamber, the safety off, and the hammer cocked back and prepared for shooting. A spent casing was also found that was determined not to have been fired from the same firearm.

{¶8} A former girlfriend of appellant testified that she picked up appellant from his mother's home a short time after the shooting of the victim. She testified that appellant denied anything to do with what happened to the victim. Appellant's mother offered testimony that appellant told her he and the victim were going to get a shell in which to roll marijuana and that when appellant left the victim to go in search for better marijuana, he heard gunshots. Detective Kathleen Carlin, an investigating officer, testified that she learned from appellant's mother that the shooting of the victim may have been in retaliation for an attempted robbery or a robbery incident involving the victim.

{¶9} Later in the day, appellant requested a ride to the home of an acquaintance and was heard remarking that something was "fishy." Nobody answered the door at the home, and

appellant told others to leave him there. A few minutes later, appellant was shot in the driveway by an unidentified individual.

{¶10} The trial court found appellant not guilty of aggravated murder (R.C. 2903.01(A)) and of discharging a firearm on or near prohibited premises (R.C. 2923.162(A)(3)). The trial court found appellant guilty of murder (R.C. 2903.02(B)) with one- and three-year firearm specifications; two counts of felonious assault (R.C. 2903.11(A)(1) and 2903.11(A)(2)), each with one- and three-year firearm specifications; and having a weapon while under disability (R.C. 2923.13(A)(2)). Following merger, the trial court sentenced appellant.

{¶11} Appellant timely filed this appeal. He raises four assignments of error for our review.

{¶12} Under his first assignment of error, appellant claims his due process rights to a fair trial were violated when the trial court found him competent to stand trial.

{¶13} "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359, 1995-Ohio-310, 650 N.E.2d 433. Although R.C. 2945.37(G) establishes a presumption that a defendant is competent to stand trial, the statute provides that a court shall find a defendant incompetent to stand trial "[i]f, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense[.]"

{¶14} The Supreme Court of Ohio has recognized that in considering whether a defendant is competent to stand trial, the test is whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and a rational as well as factual

understanding of the proceedings against him. *Berry* at 359, citing *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). A trial court's finding that a defendant is competent to stand trial is to be afforded deference and will not be disturbed when there is some reliable and credible evidence supporting those findings. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 46.

{¶15} In reaching its determination of competency in this case, the trial court "carefully considered the expert reports, the testimony elicited at the hearing, and the arguments of counsel presented both at the hearing and in briefs." The trial court heard testimony from Dr. John Fabian and Dr. Galit Askenazi regarding their evaluations of appellant. The court also heard from Detective Carlin regarding her investigation of the shooting of the victim.

{¶16} Both experts agreed that appellant suffered from amnesia. Both experts also agreed that appellant had a comprehension and understanding of the nature and objectives of the legal proceedings. However, the experts had different opinions regarding appellant's ability to assist in his own defense.

{¶17} Dr. Fabian questioned appellant's ability to assist and to make legal decisions "because of his brain damage and his genuine amnesia[.]" However, he believed that appellant "would be able to testify minimally to the facts of the court case, and [the] facts preceding the incident, but would not be able to provide much information and testimony about the nature of the alleged offenses, nor be able to question prosecution witness testimony appropriately." Dr. Fabian testified that appellant's short-term memory was "significantly impaired" and that appellant has difficulties with learning, attention, and recalling new information. Dr. Fabian opined that appellant's brain functioning impairments rendered him incapable of assisting in his defense or making legal decisions in a competent fashion.

**{¶18}** Dr. Askenazi testified that although appellant has impairments in new learning and in memory, she believed his skills are "adequate enough to have reasonable conversations with his attorney, to understand everything that is provided to him, to make reasonable decisions * * *, even if he may need extra time or extra explanation regarding such." She testified that even though appellant has no memory for the events surrounding this case, his memory from some time predating those events was intact. She indicated that appellant knew who the victim was, he knew he had interactions with him, and he did not personally recall anything that might have led to the alleged actions. Dr. Askenazi testified that appellant was still able to demonstrate complex reasoning skills. She stated that appellant was able to follow everything she was stating. She indicated that although he may rapidly forget new information he is introduced to, he was able to learn and form memories from repeated exposure. Dr. Askenazi stated that appellant was able to articulate reasons why he thought plea bargaining in a murder case was not a good idea for him. Her opinion was that appellant "has the ability to not only understand the nature and objectives of the proceedings against him, but to assist counsel in his defense" with the court making accommodations.

**{¶19}** The trial court applied the proper test for determining competency, and found appellant competent to stand trial. The judge indicated she would provide any necessary accommodations during trial, including slowing the pace of trial and ordering preparation of trial transcripts on a daily basis, and would closely monitor the matter and would not hesitate to revisit the issue of competency if the circumstances required. During the trial, the trial court did provide a number of accommodations suggested by the experts.[1] The judge noted that the

---

[1] The trial court issued a journal entry on October 18, 2016, detailing the accommodations that were made for appellant.

defendant appeared to be engaged and asked the defendant how he was feeling. The judge stated that during the course of this case, she observed the defendant and his interactions with both of the attorneys. The judge made clear that "the court had no issue as it relates to this defendant's competency" and that the accommodations were designed to assist the defendant.

{¶20} The ability to assist in one's own defense does not require the ability to remember the circumstances of the crime with which the accused is charged. *State v. Brooks*, 25 Ohio St.3d 144, 151, 495 N.E.2d 407 (1986). The Supreme Court of Ohio has made clear that "amnesia alone is not sufficient to render the accused incompetent to stand trial" and that it neither denies an accused effective assistance of counsel or the opportunity to present a defense. *Id.*[2]

{¶21} Appellant argues the facts in *Brooks*, and cases relied on therein showed overwhelming evidence of guilt. He contends the factual scenario in this case is much different and that the evidence is "highly questionable and not sufficient to sustain a conviction for murder." Not only does our review of the case reflect otherwise, but we find the trial court properly relied on the *Brooks* decision in considering whether appellant was competent to stand trial.

{¶22} Although the appellant suffered amnesia and his short-term memory was impaired, the record reflects that appellant understood the proceedings against him and Dr. Askenazi testified that appellant could make reasonable decisions. The trial court's determination that appellant could assist in his own defense was within the province of the trial judge who heard the

---

[2] We note that Ohio law does not require a trial court to make detailed written findings following the trial of a defendant who claims amnesia and the Supreme Court of Ohio made no mention of a requirement of "detailed written findings" as set forth in *Wilson v. United States*, 391 F.2d 460, 463-464 (D.C.Cir.1968). *State v. Demarco*, 11th Dist. Lake No. 2007-L-130, 2008-Ohio-3511, ¶ 14-17.

witnesses and observed appellant. Our review reflects that there was reliable and credible evidence to support the trial court's decision. Appellant's first assignment of error is overruled.

{¶23} Under his second assignment of error, appellant claims he received ineffective assistance of counsel. He argues that his trial counsel should have filed a motion in limine or an objection to the alleged dying declaration of the victim.

{¶24} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 200, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. The defendant has the burden of proving his counsel rendered ineffective assistance. *Perez* at ¶ 223.

{¶25} Evid.R. 804(B)(2) defines a dying declaration or a statement under belief of impending death as "a statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death." The Supreme Court of Ohio has indicated that for dying declarations to be admissible as evidence, "'it should be made to appear to the court, by preliminary evidence, not only that they were made in articulo mortis (at the point of death), but also made under a sense of impending death, which excluded from the mind of the dying person all hope or expectation of recovery.'" *State v. Woods*, 47 Ohio App.2d 144, 147, 352 N.E.2d 598 (9th Dist.1972), quoting *Robbins v. State*, 8 Ohio St. 131 (1857). A court may draw inferences from the circumstances surrounding

the declaration.  *State v. Woods*, 1st Dist. Hamilton Nos. C-130413 and C-130414, 2014-Ohio-3892, ¶ 21.

**{¶26}** Appellant argues that no evidence was submitted that the victim was aware that death was pending.   However, the record reflects circumstances from which belief of impending death could be inferred, including that the victim was mortally injured by a gunshot wound that hit the left carotid artery, he traveled a short distance before collapsing to the ground, he was bleeding significantly, and he verbalized appellant's name before losing consciousness. Although appellant argues that the victim was never asked who shot him, he cites no authority to support his argument.   Here again, it could be reasonably inferred that the statement concerned the cause or circumstances of what the victim believed to be his impending death.

**{¶27}** Appellant has failed to demonstrate his counsel's performance was deficient, and also has failed to demonstrate any reasonable probability that had counsel acted otherwise, the result of the trial would have been different.   Appellant's second assignment of error is overruled.

**{¶28}** Under his third assignment of error, appellant claims there was insufficient evidence to support his convictions.   A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.   In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶29} It is well recognized that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks* at paragraph one of the syllabus. "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶30} Appellant cites the evidence favorable to his defense, while ignoring other evidence in the case. Upon viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Our review reflects that several witnesses placed appellant with the victim within minutes of the shooting, there was evidence that appellant left the scene and returned without a jacket he had been wearing, a casing that did not match the weapon linked to the victim was found at the scene, and there was evidence of a dying declaration. We find there was sufficient evidence to establish the elements of the crimes for which appellant was convicted. Appellant's third assignment of error is overruled.

{¶31} Under his fourth assignment of error, appellant claims his convictions were against the manifest weight of the evidence. When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, at 387. Reversing a conviction as being

against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*.

{¶32} Appellant again points to evidence to support his defense. He questions the statement by the victim's girlfriend that the victim said appellant's name, argues that the testimony of the medical examiner drew into question the victim's consciousness and ability to verbalize after sustaining the significant injury to his left carotid artery, and points to the testimony of appellant's mother that indicated he had informed her he left the victim prior to the shooting in search of stronger marijuana. Appellant again ignores other evidence in the case. The victim's girlfriend testified to the narrow time frame from hearing the gunshot to observing the victim moving and collapsing. There also was evidence showing that the victim had walked several hundred feet before collapsing and that it would have been possible for the victim to verbalize before losing consciousness.

{¶33} After having reviewed the entire record, we find that the trial court neither lost its way nor created a miscarriage of justice in convicting appellant of murder, the two counts of felonious assault, and having a weapon while under disability. Appellant's fourth assignment of error is overruled.

{¶34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
ANITA LASTER MAYS, J., CONCUR